IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| ALICE M. ORIE | : | |
| | : | |
| v. | : | |
| | : | Civil No: CCB-04-3703 |
| CHARLES STREET HEALTHCARE | : | |
| CENTER, LLC, d/b/a FUTURECARE | : | |
| HOMEWOOD | : | |
| | : | |

...o0o...

**MEMORANDUM**

The plaintiff Alice M. Orie filed this case, alleging discriminatory discharge, against

defendant Charles Street Healthcare Center, LLC, d/b/a FutureCare Homewood ("Homewood").

Specifically, Orie alleges that Homewood terminated her employment on the basis of race,

national origin, and age in violation of Title VII and the ADEA.  Now pending is the defendant's

motion for summary judgment.  The issues have been fully briefed, and no hearing is necessary.

*See* Local Rule 105.6.  For the following reasons, the defendant's motion will be granted.

I. Background

Homewood is one of 10 long-term nursing facilities run by FutureCare Health

Management Corporation ("FutureCare") in the Baltimore/Washington area.  Orie, an African-

American woman of Nigerian descent, was employed by Homewood as the facility's sole

dietician from November 1997 until her termination in July 2004.  In August and September

2003, the State of Maryland Department of Health and Mental Hygiene ("DHMH") inspected the

facility and found deficiencies in a number of areas, including functions related to its nutrition

1

program.  (*See* Def.'s Mot., Ex. 4, at FC0452-60.)   In particular, DHMH concluded that

deficiencies in the nutrition program had contributed to causing "actual harm" to a resident, and

faulted Orie's dietary notes for being "vague and subjective." (*See id.* at FC0455.)[1]  As a direct

result of the DHMH survey, FutureCare replaced Homewood's administrator in October 2003

with Carolynne Adams, who was specifically charged with addressing the deficiencies.  In

addition, FutureCare's Regional Manager Eric Shope hired two consulting dieticians on a

contract basis to review the facility's dietary records.  Homewood has successfully passed three

subsequent DHMH inspections.

        Adams had several interactions with Orie in which they discussed Adams' concerns with

Orie's performance, including at least two meetings in December 2003 and one in March 2004.[2]

Adams also frequently discussed her concerns with Orie's performance through their regular

informal interactions.

        In June 2004, the facility's Nutrition Committee implemented an action plan designed to

address continued deficiencies in its nutrition program.  (Def.'s Mot., Ex. 6)  The document

assigned various specific tasks to a number of different individuals, including Orie, who was

given a copy of the plan.  Her duties included reviewing residents' 3-day intake and writing

specific notes, comparing and noting weight losses/gains, and clearly identifying residents'

--------

[1] Although the court cannot locate a explicit reference to "actual harm" in the DHMH
survey (Def.'s Mot., Ex. 4), the parties are in agreement that such a finding was made.
(Affidavit of Carolynne Adams ¶ 3; Deposition of Alice M. Orie, at 64.)

[2] Orie disputes the precise nature of these conversations, arguing that they did not
constitute verbal warnings *per se*. (Orie Dep., at 169.)  She nonetheless acknowledges that the
March 2004 discussion was a "verbal meeting" in which Adams expressed her concerns about
Orie's performance.  (Orie Dep., at 170.)

problems in a care plan.  (*Id.*)

On July 2, 2004, Adams had a meeting with Orie to discuss further concerns with her performance, including her apparent failure to comply with the action plan.  Adams also gave Orie a written disciplinary counseling notice, which stated in part:

> As you are aware, the Nutrition Committee is operating under an Action Plan. Within that action plan are specific areas for which you are responsible.  These areas related to your documentation have been addressed previously.  Immediate correction related to your documentation is necessary...

> Any further episode of insubordination or failure to perform at established standards will result in termination.

(Def.'s Mot., Ex. 7.)  On or about July 26, 2004, Teresa Crowley, the independent Quality Monitor for FutureCare, reviewed the records of several patients at Homewood; although her focus was on reviewing wound care records, she noted several deficiencies as to the dietary records.[3]  She documented her review in two reports, which she gave to Adams, who in turn provided them to Orie on July 27 and 28, 2004.  Adams also independently reviewed the records of six residents whose dietary records were identified in Crowley's report, and noted deficiencies concerning issues addressed in the action plan and July 2 counseling memorandum to Orie. Adams had a meeting with Shope on July 29, 2004 regarding Orie's performance, in which she recommended terminating her employment, and Shope agreed with that recommendation.

On July 30, 2004, Adams met with Orie and gave her a written termination notice, which detailed the deficiencies regarding the six residents, in addition to several other grounds such as tardiness to meetings and confrontational attitude.  Adams eventually replaced Orie with Lindy

---

[3] Orie alleges that she overheard Adams tell Crowley to focus only on nutrition in her survey.  (Affidavit of Alice M. Orie ¶ 12.)

Burlew, a white woman.

Orie filed a charge with the Maryland Commission on Human Relations on August 23, 2004, and a charge with the EEOC on August 31, 2004, alleging harassment and disparate treatment based on age and national origin.  After the two charges were merged, she received a Notice of Right to Sue from the EEOC dated September 2, 2004.  She filed the present suit in this court on November 22, 2004.


II. Standard of review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the evidence in the light most favorable to...the nonmovant, and draw all

reasonable inferences in her favor without weighing the evidence or assessing the witness'

credibility," *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002),

but the court also must abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial."  *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and

citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).


III. Analysis

    A. ADEA claim

    As an initial matter, the plaintiff's ADEA claim cannot succeed because she failed to

exhaust her administrative remedies, in that she did not raise this claim in her EEOC complaint.

29 U.S.C. § 626(d); *Vance v. Whirlpool Corp.*, 707 F.2d 483, 489 (4th Cir. 1983) (holding that

the 60-day requirement in § 626(d) is jurisdictional); *Metzenbaum v. John Carroll University,*

987 F.Supp. 610, 618 (N.D. Ohio 1997).  Plaintiff's attempted reliance on *Stevens v. Dept. of*

*Treasury*, 500 U.S. 1 (1991), is misguided, because that case only concerns the procedures

applicable to federal employees.[4]

---

[4] The plaintiff has submitted a motion to file a surreply in order to make, *inter alia*,
additional arguments for why she was not required to exhaust administrative remedies. Given
that the surreply does not address issues raised for the first time in the defendant's reply brief,
that motion will be denied.  *See Khoury v. Meserve*, 268 F.Supp.2d 600, 605-06 (D.Md. 2003),
*aff'd* 112 Fed. Appx. 923 (4th Cir. 2004).  In any event, the arguments in the surreply are
unpersuasive.
    In addition, even assuming that the court had jurisdiction over the plaintiff's ADEA
claim, it would grant summary judgment for the defendants on the same basis as her Title VII
claims, as discussed below.  *See E.E.O.C. v. Warfield-Rohr Casket Co., Inc.*, 364 F.3d 160, 163
(4th Cir. 2004) (noting that the same evidentiary standards used in Title VII cases apply to an
ADEA claim).

B. Title VII

The plaintiff has not proffered any direct evidence of discriminatory animus based on race or national origin by the defendant.   Initially, she attempts to proceed under the burden-shifting analysis employed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination, which the Fourth Circuit has described as comprising the following factors:

> (1) that he is a member of a protected class; (2) that he suffered from an adverse employment action; (3) that at the time the employer took the adverse employment action he was performing at a level that met his employer's legitimate expectations; and (4) that the position was filled by a similarly qualified applicant outside the protected class.

*King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003).   If the plaintiff successfully demonstrates a prima facie case, the burden shifts to the employer to provide a legitimate nondiscriminatory reason for the termination.  *See Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000). Once the employer meets this burden, the plaintiff must prove that the proffered reason was mere pretext and that discrimination was the real motive behind the termination.  *See id.*; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000) (the factfinder must not only disbelieve the employer, but also believe the plaintiff's explanation of intentional discrimination, although this conclusion can be based on the plaintiff's prima facie case and sufficient evidence that the employer's justification was false).  To avoid judgment as a matter of law on this question, the plaintiff must establish a "legally sufficient evidentiary basis for a reasonable jury to find for [her]."  *Hawkins*, 203 F.3d at 278-79 (quoting Fed.R.Civ.P. 50(a)).

The defendant argues that the plaintiff has failed to establish even a prima facie case, in that she was not performing at a level that met its legitimate expectations at the time of her termination. The defendant has presented significant evidence that its expectations of Orie's performance were not being met, including the counseling memorandum and termination notice. Orie, on the other hand, has not presented any evidence that those expectations were not legitimate, other than her bare opinion that she was fulfilling the requirements of her job.  *See Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996) ("It is the perception of the decisionmaker which is relevant, not the self-assessment of the plaintiff.") (citations omitted); *Frank v. England*, 313 F.Supp.2d 532, 538 (D.Md. 2004) (finding that the plaintiff's assertion of satisfactory performance failed to establish a prima facie case where employer presented documentation of performance deficiencies).  She has not, furthermore, presented any expert opinion testimony as to the defendant's legitimate job performance expectations and/or an analysis of her performance in light of those expectations.  *See King*, 328 F.3d at 149-50.[5]

Even assuming that Orie could state a prima facie case of discrimination, the defendant has proffered a legitimate and well-documented nondiscriminatory basis for the termination – i.e. performance deficiencies – and the plaintiff has failed to offer any valid evidence of pretext.[6]

---

[5] In terms of the other factors, Orie is a member of a protected class, she suffered an adverse employment action, and her replacement was from outside that class.  Nonetheless, these factors are alone insufficient to state a prima facie of discrimination.

[6] Indeed, as the defendant points out, the plaintiff's opposition brief essentially comprises a recitation of legal standards – often drawn from caselaw outside of the Fourth Circuit – followed by bald assertions that there is a genuine dispute of material fact regarding the motive behind the plaintiff's termination.  (Pl.'s Opp'n.)

Again, her unsubstantiated beliefs that Adams treated her unfairly and that race and national origin formed the basis of her termination are not sufficient to rebut the defendant's explanation. *See Hawkins*, 203 F.3d at 281; *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989) (noting that "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action").[7]

The plaintiff likewise cannot succeed under a mixed-motive theory of discrimination, given that she has not presented any valid evidence suggesting that race or national origin played a role in her termination.  Invoking a mixed-motive theory does not allow a plaintiff to rebut a legitimate nondiscriminatory explanation by positing that discrimination *might have been* an additional motivating factor, as Orie seems to assume; under such a theory, the plaintiff must still proffer evidence – direct or circumstantial – that would allow a reasonable jury to conclude that discrimination was indeed such a motivating factor.  *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 317-19 (4th Cir. 2005); *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 99-100 (2003).[8]

---

[7] Plaintiff has submitted letters she sent to Adams and Jack Gottschalk, Human Resource Director for FutureCare, objecting to the July 2, 2004 disciplinary memorandum, and alleges that she never received any reply to them. (Pl.'s Opp'n, Ex.2; Orie Dep. at 166).  At most, these letters are evidence of a professional dispute over Orie's performance, not evidence that race or national origin motivated the defendant.  *See Hawkins*, 203 F.3d at 280 ("In short, we do not sit to appraise Price's [the plaintiff's supervisor] appraisal.  Rather, our sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory.  Hawkins' extensive efforts to rebut Price's assessment of her performance simply do not provide a legally sufficient basis for this conclusion.") (quotations and citations omitted).  Nor do these letters alone constitute the kind of protected activity that can form the basis of a retaliation claim.

[8] The plaintiff's allegations concerning another employee, Barbara Hoffman, including that she made racially offensive remarks in Orie's and/or Adams' presence, are not probative of

IV. <u>Conclusion</u>

It is clear to the court that the plaintiff was distressed by her termination; however, she has not established any legal basis for relief.  Accordingly, the defendant's motion for summary judgment will be granted by separate Order.


____March 10, 2006_____                    _____/s/_____
            Date                                         Catherine C. Blake
                                                         United States District Judge

---

any discriminatory motive on the part of the defendant.  (*See* Orie Aff. ¶ 17; Pl.'s Opp'n, Ex. 4.)